**SUMMONS**
**(CITACION JUDICIAL)**

SUM-100

**NOTICE TO DEFENDANT:** MONTECITO PRODUCTIONS, LLC, a
**(AVISO AL DEMANDADO):** Delaware limited liability company, NICHOLAS
LONGANO, an individual, and BRILLIANT VR, INC., a Delaware
corporation, and DOES 1 through 10, inclusive

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

APR 11 2016

Sherri R. Carter, Executive Officer/Clerk
By **Darnetta Smith, Deputy**

**YOU ARE BEING SUED BY PLAINTIFF:** CINÉWORLD LLC, a Delaware
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** limited liability company,
and CINÉMOI NORTH AMERICA, LLC, a California limited liability
company

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

Los Angeles Superior Court
1725 Main Street
Santa Monica, CA 90401
West District

CASE NUMBER:
*(Número del Caso):*
**SC125682**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
BRIAN G. WOLF (BAR NO. 135257)      310-556-3501      310-556-3615
TODD S. EAGAN (BAR NO. 207426)
LAVELY & SINGER PC
2049 Century Park East, Suite 2400, Los Angeles, California 90067-2906

DATE: **APR 11 2016**          Clerk, by _____, Deputy
*(Fecha)*          *(Secretario)*          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)          [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)          [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

[SEAL]

Sherri R. Carter, Clerk

A TRUE COPY ATTEST
ERIC RUBIN
PROCESS SERVER

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

APR 1 1 2016

Sherri R. Carter, Executive Officer/Clerk
By Darnetta Smith, Deputy

BRIAN G. WOLF (BAR NO. 135257)
TODD S. EAGAN (BAR NO. 207426)
LINDSAY MOLNAR (BAR NO. 272156)
LAVELY & SINGER
PROFESSIONAL CORPORATION
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone: (310) 556-3501
Facsimile: (310) 556-3615

Attorneys for Plaintiffs
CINÉWORLD LLC AND
CINÉMOI NORTH AMERICA, LLC

CASE MANAGEMENT CONFERENCE

AUG 0 1 2016                LISA HART COLE

Date

Dept O@8:30ᵃ

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES - WEST JUDICIAL DISTRICT

| | |
|---|---|
| CINÉWORLD LLC, a Delaware limited liability company, and CINÉMOI NORTH AMERICA, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MONTECITO PRODUCTIONS, LLC, a Delaware limited liability company, NICHOLAS LONGANO, an individual, and BRILLIANT VR, INC., a Delaware corporation, and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO. SC125682<br><br>**COMPLAINT FOR:**<br><br>(1) **FRAUD;**<br>(2) **MISAPPROPRIATION OF TRADE SECRETS;**<br>(3) **BREACH OF CONTRACT;**<br>(4) **VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200** *ET SEQ.***;**<br>(5) **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS;**<br>(6) **NEGLIGENT MISREPRESENTATION;**<br>(7) **BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>(8) **SPECIFIC RECOVERY OF PERSONAL PROPERTY; AND**<br>(9) **PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

1

COMPLAINT

Plaintiffs CINÉWORLD LLC ("CinéWorld") and CINÉMOI NORTH AMERICA, LLC ("Cinémoi")(collectively,"Plaintiffs") hereby allege as follows:

## SUMMARY OF THE ACTION

1.     After spending years creating and developing a unique and potentially highly profitable virtual reality inter-active program which Plaintiffs named *CinéWorld*, Plaintiffs retained Defendants Nicholas Longano ("Longano") and his affiliated company Montecito Productions, LLC ("MPL") to further develop and bring *CinéWorld* to life. Plaintiffs were led to believe that Longano, MPL and their software team were experienced software developers with respect to virtual reality programs and were fully competent and able to implement and develop Plaintiffs' unique concept for the *CinéWorld* virtual reality program. Plaintiffs instead discovered that Longano and MPL, together with their affiliated entity Brilliant VR, Inc. ("BVR") fraudulently induced Plaintiffs into revealing their proprietary and confidential trade secret information for the *CinéWorld* virtual reality program so that Defendants could secretly use the proprietary information to develop a competing virtual reality program.

2.     After fully disclosing to Longano the unique and proprietary concepts and elements comprising the *CinéWorld* virtual reality program, and after paying MPL $275,000 for services purportedly performed in developing and creating the *CinéWorld* virtual reality program, Plaintiffs discovered that Defendants worked in concert and conspired with one another to secretly create a separate and competing virtual reality program known as *Vzbl,* which substantially copies, incorporates, misappropriates and uses Plaintiffs' unique and confidential proprietary concepts and trade secrets comprising the *CinéWorld* virtual reality program. Plaintiffs further learned that Defendants were actively approaching and soliciting many of the same potential investors and strategic partners that Plaintiffs had disclosed in confidence to Longano concerning their intent to market and exploit the *CinéWorld* virtual reality program.

3.     Plaintiffs bring this action to protect their confidential and proprietary trade secret information and to seek redress from the harm that Defendants' wrongful conduct has caused and will cause Plaintiffs. Plaintiffs seek an injunction and appropriate order to, as more fully described in the prayer below, enjoin Defendants from (I) using, misappropriating or disclosing any of

COMPLAINT

Plaintiffs' confidential and proprietary trade secret information comprising or included in the *CinéWorld* virtual reality program; (ii) performing any work or services derived from or based on Plaintiffs' confidential and proprietary trade secret information; (iii) developing, releasing or exploiting a virtual reality program or product substantially similar to the *CinéWorld* program; (iv) communicating, marketing or divulging to others, or aiding, abetting or permitting any other person or entity to use any of Plaintiffs' confidential and proprietary trade secret information; (v) engaging in any other acts that amount to unfair competition with Plaintiffs; and, (vi) otherwise violating the terms of the nondisclosure and other agreements entered into between Plaintiffs and Defendants.

## THE PARTIES

4.      Plaintiff CinéWorld is a Delaware limited liability company with its principal place of business in Los Angeles, California.  CinéWorld is a wholly-owned subsidiary of plaintiff Cinémoi and its founders.

5.      Plaintiff Cinémoi is a California limited liability company with its principal place of business in Los Angeles, California.

6.      Plaintiffs are informed and believe and based thereon allege that defendant Longano is a resident of the State of California who is, and at all times relevant hereto has been, conducting business within the County of Los Angeles, State of California.

7.      Plaintiffs are informed and believe and based thereon allege that defendant MPL is a Delaware limited liability company which is, and at all times relevant hereto has been, conducting business within the County of Los Angeles, State of California.

8.      Plaintiffs are informed and believe and based thereon allege that defendant BVR is a Delaware corporation which is, and at all times relevant hereto has been, conducting business within the County of Los Angeles, State of California.

9.      Plaintiffs are presently unaware of the true names and capacities of the Defendants sued herein as Does 1 through 20, inclusive, and therefore sues said Defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege the true names and capacities of such fictitiously named defendants when the same have been ascertained.  Plaintiffs are informed and believe and based thereon allege that each of the fictitiously-named defendants is responsible in

3

COMPLAINT

some manner for the occurrences, acts and omissions alleged herein and that the damages about which Plaintiffs complain were proximately caused by their conduct. Hereinafter, all defendants (including the Doe defendants) will sometimes be referred to collectively as "Defendants."

10. Plaintiffs are informed and believe and based thereon allege that at all material times each Defendant was and is the agent, employee, partner, joint venturer, co-conspirator, owner, principal and employer of each of the remaining Defendants and at all times herein mentioned was acting within the course and scope of that agency, employment, partnership, conspiracy, ownership or joint venture. Plaintiffs are further informed and believe and based thereon allege that the acts and conduct of each Defendant alleged herein were known to, and authorized or ratified by, the officers, directors and managing agents of each other Defendant.

11. Plaintiffs are informed and believe and based thereon allege that at all times mentioned herein there existed a unity of interest and ownership between Longano and his affiliated companies MPL and BVR, such that any individuality and separateness between Longano, on the one hand, and MPL and BVR, on the other hand, has ceased, and MPL and BVR are the alter ego of Longano. Plaintiffs are further informed and believe and based thereon allege that the properties of MPL and BVR are commingled with the separate assets of Longano, such that there is no distinction between the individual and the entities' properties. Plaintiffs are further informed and believe and based thereon allege that MPL and BVR are owned, controlled, dominated, used, managed and operated by and on behalf of Longano and that Longano, MPL and BVR are effectively one and the same. Plaintiffs are further informed and believe and based thereon allege that adherence to the fiction of the separate existence of MPL and BVR as entities distinct from Longano would succeed in avoiding legally incurred liabilities while maintaining the benefits of the entities, an unfair and unjust result.

12. Plaintiffs are informed and believe and thereupon allege that at all relevant times, Defendants acted in concert, conspired and agreed among themselves to commit the wrongful acts and practices alleged in this Complaint, and that such wrongful acts and practices were committed pursuant to and in furtherance of such conspiracy and agreement, and with the consent and approval of each of the Defendants. Plaintiffs are informed and believe, and thereupon allege, that each of the

Defendants are liable as a direct participant, co-conspirator and/or aider and abettor of the wrongful acts and practices alleged herein.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**A.    Plaintiffs' Confidential and Proprietary Trade Secrets and the CinéWorld VR Program.**

13.    Cinémoi is a 24-hour television channel showcasing curated films, high-couture festivals, and international life style programming new to the U.S. television market. Expanding beyond international television, in or around April of 2015, and after years and countless hours of work, Cinémoi's President and Chief Creative Officer, Daphna Ziman ("Ziman") completed the proprietary and unique concept and design for a virtual entertainment world called *"CinéWorld"* (the "CinéWorld VR Program").

14.    The CinéWorld VR Program was to be developed, distributed, marketed and sold through CinéWorld, LLC, a wholly-owned subsidiary of Cinémoi and its founders. The detailed design, functions, content, virtual environments, business plan and concept of the CinéWorld VR Program, as well as information on research and development, marketing, advertising, strategy, pricing, strategic business planning, monetization and exploitation strategies, the identification of certain business partners, and other confidential and proprietary trade secret information regarding the CinéWorld VR Program constitutes Plaintiffs' confidential and proprietary trade secrets (collectively and individually the "CinéWorld Confidential Information").

**B.    Plaintiffs Reveal the CinéWorld Confidential Information to Defendants Pursuant to a Non-Disclosure Agreement.**

15.    In April 2015, Plaintiffs' representatives Roderick Sherwood ("Sherwood") and Ziman, were introduced to Nicholas Longano, the CEO of defendant MPL and purported majority owner of defendant BVR. Plaintiffs are informed and believe and based thereon allege that Longano controls, operates and directs all activities of MPL and BVR, and that MPL and BVR operate and function as the alter-egos of Longano. Longano represented to Ziman and Sherwood that he had significant experience and expertise in the creation and development of virtual reality programs and products, including, among others, that he had created a virtual reality product for Vivendi Universal.

5

COMPLAINT

16. Shortly after the introduction to Defendants, Plaintiffs and Longano executed a Non-Disclosure Agreement dated May 12, 2015 (the "NDA"). A true and correct copy of the NDA is attached hereto as **Exhibit "A."** It provides, in relevant part:

> "During the Term [of the Agreement], Recipient shall...(b) Not disseminate or disclose any Confidential Information to any third party, other than to its employees and representatives that need to know such information and have agreed to be bound by the terms hereof, unless required by law or pursuant to a valid court order..." (NDA, ¶ 2).
>
>            \*       \*       \*
>
> "The Recipient shall not at any time prior to the expiration of two (2) years from the date of this Agreement, without the prior written consent of the Discloser, **by-pass, compete, avoid or circumvent the Discloser** relative to the Business Opportunity, **including by utilizing any of the Confidential Information or otherwise exploiting or deriving any benefit from the Confidential Information."** (NDA, ¶ 7; Emphasis Added).

17. After the NDA was signed, Plaintiffs met with Defendants on several occasions and disclosed significant and valuable aspects of the CinéWorld Confidential Information to Defendants, including via a detailed PowerPoint presentation and a summary of the provisional patent for the CinéWorld VR Program. All disclosures of the CinéWorld Confidential Information made to Defendants were explicitly subject to and conditioned upon Defendants' agreement to protect and handle the CinéWorld Confidential Information, pursuant to the terms of the NDA.

18. Between the months of May 2015 and September 2015 Longano, Ziman and Sherwood engaged in several meetings concerning the creation and development of Plaintiffs' CinéWorld VR Program. During those meetings, Longano represented that he and his software team had the ability and technological expertise necessary to create and build the unique virtual reality scenes, locations and environments comprising the CinéWorld VR Program. Longano presented a video to Ziman and Sherwood that Longano represented demonstrated the work product that he and his colleagues at MPL and BVR had created, and that demo video showed the quality and sophistication of the work product that he, MPL and BVR would provide to Plaintiffs if they agreed to retain his services, individually, and the services of MPL and BVR to create the CinéWorld VR Program. Longano represented that the demo video that he displayed to Ziman and Sherwood represented virtual reality environments and scenes he and his staff with MPL and BVR had created and otherwise licensed the rights to, including virtual reality images of iconic Los Angeles buildings,

6

attractions and landmarks such as the Roxy Theater, Guitar Center, and other well-known landmarks. Longano represented that if he and MPL, working in conjunction with BVR, were retained by Plaintiffs to create and develop the CinéWorld VR Program, they had the ability and expertise to create the high quality, high definition and unique virtual reality scenes, elements and environment comprising the CinéWorld VR Program. In reliance on the aforesaid representations made by Longano, individually and on behalf of MPL and BVR, Plaintiffs agreed to retain the services of Longano, MPL and their software team to create and develop the CinéWorld VR Program.

**C.      Plaintiffs Enter Into a Written Agreement Engaging Defendants to Develop the CinéWorld VR Program.**

19.      In reliance on the foregoing representations, among others, by Longano individually and on behalf of MPL and BVR, the parties negotiated the terms of a written Memorandum of Understanding, pursuant to which Plaintiffs retained Longano and MPL to develop the CinéWorld VR Program based on and incorporating the CinéWorld Confidential Information.

20.      Longano negotiated the terms of the agreement between the parties in both his capacity as a purported controlling owner of BVR and CEO of MPL, sending emails from both company addresses to Plaintiffs on multiple occasions. Among other representations made on behalf of Defendants, on June 2, 2015, Longano sent an email to Sherwood and Ziman from his BVR company email address falsely representing that Defendants would be able to launch the CinéWorld VR Program in January of 2016. A few weeks later, on June 14, 2015, Longano sent an email to Sherwood on behalf of Defendants regarding a proposed business model for the CinéWorld VR Program falsely representing that the projected monthly production budget would enable Defendants to "make significant additions and technology leaps as a result...." In other words, Longano, on behalf of BVR and MPL, represented that Defendants would develop quality and technologically-advanced Artwork for the CinéWorld VR Program.

21.      During the negotiations of the Memorandum of Understanding the parties also discussed a potential merger between CinéWorld and BVR. In furtherance of Defendants' conspiracy, and in an effort to persuade Plaintiffs to agree to a merger, on June 9, 2015, Longano, on behalf of each of the Defendants and via his BVR company email, sent Cinémoi's CEO,

COMPLAINT

Sherwood, a Private Placement Memorandum ("PPM") for BVR. In the PPM, Defendants, and each of them, falsely represented that BVR was "in the process of filing the necessary paperwork for provisional patents for the technology and software," and Longano had 15 years of "video game publishing and development experience" and that his "learning and experience transcends most gaming platforms and across games and virtual worlds and he has spent several years finessing the technologies and consumer experiences around virtual entertainment and the delivery of content and the monetization of such virtual experiences." On June 15, 2015, Longano, on behalf of each of the Defendants, sent Sherwood an email from his BVR company email address reiterating the aforementioned false representations regarding BVR and also represented that if the two companies merged, BVR's valuable assets "will be assigned to CinéWorld."

22.    Relying on the aforesaid representations, among others, made by Longano individually and on behalf of each of the Defendants, and unaware that they were false, Plaintiffs entered into a written Memorandum of Understanding dated September 10, 2015 (the "Agreement") with Longano and MPL. A true and correct copy of the Agreement is attached hereto as **Exhibit "B."**

23.    Pursuant to the Agreement, Defendants agreed to provide Plaintiffs with artwork for the CinéWorld VR Program including "virtual environments, virtual avatars, avatar animations, and virtual clothing" (the "Artwork"). Exh. B., p. 1. In consideration for creating the Artwork, Plaintiffs agreed to compensate Defendants $55,000 per month. *Id.* Plaintiffs in fact paid Defendants $275,000 pursuant to the Agreement.

24.    The Agreement also expressly provides that Plaintiffs shall own and Defendants exclusively grant to Plaintiffs "all rights, title and interest of every kind and character in perpetuity throughout the world in and to all the results and proceeds" of Defendants' services under the Agreement. The Agreement further provides that the Artwork and "other work delivered for CineWorld" under the Agreement "shall be deemed works-made-for-hire specifically commissioned for use" by Plaintiffs. *See* Exh. B., p. 2.

///

///

COMPLAINT

25. Plaintiffs also agreed to the merger of CinéWorld and BVR pursuant to which BVR would acquire an 18% ownership interest in CinéWorld based on a valuation method provided in the Agreement. *See* Exh. B., p. 3.

26. Pursuant to the Agreement, the parties also agreed to keep secret all confidential information. The Agreement provides, in relevant part:

> "***Confidential Information***: 'Confidential Information' means all information, whether in written, verbal...electronic, data or any other form, including, without limitation, proprietary, technical, financial information...software, computer programming techniques, design, research, documents prepared by either Party...Confidential Information shall also..include any samples, models or prototypes, or parts thereof.
>
> ***Non-Disclosure:*** Parties will not disclose any Confidential Information except to either Party's representatives who need to know such information...Each of the Party's representatives shall be informed by the other party of the confidential nature of such information and shall be directed to treat such information in confidence in accordance with this Agreement, and either Party shall be liable to the other Party for any breaches of this Agreement."

*See* Exh. B., pp. 3-4.

27. The Agreement provides that the above-cited confidentiality and non-disclosure provisions of the Agreement "shall be binding obligations of the Parties whether or not" the Agreement was executed. *See* Exh. B., p. 1.

**D. Using the CinéWorld Confidential Information, Defendants Create A Competing VR Program.**

28. Between May and December of 2015, Plaintiffs and Defendants held various meetings regarding development of the CinéWorld VR Program, and Plaintiffs made regular monthly payments to Defendants pursuant to the terms of the Agreement.

29. Despite timely monthly payments to Defendants, Plaintiffs are informed and believe and based thereon allege that Defendants Longano and MPL worked in concert and conspired to disclose the CinéWorld Confidential Information to BVR with the intent that Longano, MPL and BVR would misappropriate and use the CinéWorld Confidential Information for their own commercial advantage and to the detriment of Plaintiffs.

///

///

9

30. On or about February 8, 2016, Plaintiffs discovered that Defendants, and each of them, were in fact creating a competing virtual reality program known as "Vzbl" (the "Vzbl VR Program"). The Vzbl VR Program misappropriates, implements and includes significant elements and aspects of Plaintiffs' proprietary and confidential trade secrets and the CinéWorld Confidential Information comprising the CinéWorld VR Program. At the same time that Defendants were creating their competing Vzbl VR Program, although it was represented to Plaintiffs that Defendants were developing unique and technologically-advanced Artwork for the CinéWorld VR Program, Plaintiffs instead have only been shown (but not provided) unfinished beta versions of lower quality, generic artwork that was purchased from third party vendors and not created by Defendants.

31. Plaintiffs also discovered that Defendants were secretly meeting with Plaintiffs' current and potential business partners, financiers, and vendors to garner strategic, programming and financial support to launch their Vzbl VR Program.

32. Defendants have also refused to merge CinéWorld and BVR as contemplated by the Agreement, which was a material inducement to enter into the Agreement in the first place.

## FIRST CAUSE OF ACTION

### (For Fraud – Against All Defendants)

33. Plaintiffs reallege, adopt and incorporate by reference, each and every allegation contained in Paragraphs 1 through 32, inclusive, of this Complaint as if fully set forth herein.

34. In and during 2015, and prior to Plaintiffs and Defendants entering into the Agreement, Longano, both individually and on behalf of MPL and BVR, falsely represented to Plaintiffs, among other misrepresentations, that: (1) BVR is "in the process of filing the necessary paperwork for provisional patents for the technology and software," and that if the two companies merged, these valuable assets "will be assigned to CinéWorld"; (2) Longano had 15 years of "video game publishing and development experience" and that his "learning and experience transcends most gaming platforms and across games and virtual worlds and he has spent several years finessing the technologies and consumer experiences around virtual entertainment and the delivery of content and the monetization of such virtual experiences"; (3) Defendants would be ready to launch CinéWorld VR Program in January of 2016; (4) Defendants had the ability and technological expertise to create

10

COMPLAINT

and build the unique elements, aspects and environments contemplated for the CinéWorld VR Program; (5) that Defendants had licensed the necessary rights to iconic landmark buildings, attractions and images and, thereupon created high definition virtual reality images and environments incorporating those iconic buildings, attractions and images, and that Defendants were legally authorized and technically able to incorporate those iconic landmark images, buildings and environments into the CinéWorld VR Program; (6) Defendants could make "significant additions and technology leaps" in the development of CinéWorld VR Program; and (7) Defendants could and would develop a high-quality, technologically-advanced CinéWorld VR Program for Plaintiffs.

35. The foregoing representations made by and on behalf of Defendants were false, or made recklessly and without regard for the truth. Specifically, Plaintiffs are informed and believe and based thereon allege that at the time Defendants made the foregoing representations, Longano, MPL and BVR knew they were unable and otherwise did not intend to comply with the terms of the Agreement or NDA and instead, knowingly conspired to use and misappropriate the CinéWorld Confidential Information so they could create a competing virtual reality program incorporating significant aspects and elements of the CinéWorld Confidential Information.

36. Plaintiffs are informed and believe and based thereon allege that the foregoing representations made by and or on behalf of Defendants were made with the intention of inducing Plaintiffs to enter into the NDA and Agreement so that Defendants could gain access to the CinéWorld Confidential Information and thereby use and misappropriate the CinéWorld Confidential Information for their own commercial and economic advantage and to the economic detriment of Plaintiffs. Plaintiffs did in fact reasonably and justifiably rely on the aforesaid representations to their detriment by entering into the NDA and Agreement, disclosing CinéWorld Confidential Information, and transferring at least $275,000 to Defendants for Defendants' benefit in reliance on the aforesaid representations of Defendants.

37. Furthermore, as the parties entrusted with the use of the substantial monies contributed by Plaintiffs towards development of the CinéWorld VR Program, Defendants had a duty to, among other things, disclose to Plaintiffs all material facts concerning the use of that money, and to refrain from any conduct, misrepresentation, concealment, breach of contract or duty, threat or

11

adverse pressure of any kind in connection with such use. Nevertheless, Defendants appear to have used, in part, the monies contributed by Plaintiffs to purchase third-party generic off-the-shelf artwork that was supposed to have been created/invented by Defendants pursuant to the Agreement, but was clearly not.

38. The above acts were done with the knowledge, approval and ratification of each Defendant. Defendants each aided and abetted in the fraudulent representations because they were aware of and substantially assisted Longano in carrying out their scheme. Plaintiffs are informed and believe that each of the Defendants directly participated in the fraud, knowingly benefitted from the misappropriation and use of the Confidential Information and/or ratified the fraudulent conduct. The Defendants are therefore each liable for the alleged conduct.

39. As a direct and proximate result of the aforesaid fraudulent conduct, Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial, but believed to be in excess of $50,000,000. When Plaintiffs have ascertained the full amount of their damages, they will seek leave of Court to amend this Complaint accordingly.

40. Plaintiffs are informed and believe and based thereon allege that Defendants, in doing the things herein alleged, acted willfully, maliciously, oppressively and despicably with the full knowledge of the adverse effect of their actions on Plaintiffs, and with willful and deliberate disregard of the consequences to Plaintiffs such as to constitute oppression, fraud or malice. By reason thereof, Plaintiffs are entitled to recover punitive and exemplary damages from Defendants in an amount appropriate to punish or set an example of Defendants and to deter Defendants from engaging in such conduct in the future.

## SECOND CAUSE OF ACTION

### (Misappropriation of Trade Secrets Against All Defendants)

41. Plaintiffs reallege, adopt and incorporate by reference, each and every allegation contained in Paragraphs 1 through 40, inclusive, of this Complaint as if fully set forth herein.

42. At all relevant times, Plaintiff was in possession of trade secret information as defined by California's Uniform Trade Secrets Act ("UTSA"), Civil Code section 3426.1, subd. (d). As described above, Defendants were provided access to such trade secrets pursuant to the NDA and

12

Agreement. The proprietary information that Defendants had access to constitute trade secrets because Plaintiffs, as described herein, derive independent economic value from that information, such information is not generally known nor readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy. Plaintiffs' trade secret information described herein is not and was not generally known to Plaintiffs' competitors in the industry.

43. Indeed, the CinéWorld Confidential Information was designed and created by Plaintiffs over a period of approximately two years and through a great deal of effort, time and investment prior to Plaintiffs being introduced to Defendants, and it is valuable, proprietary and confidential.

44. The CinéWorld Confidential Information is extremely valuable to Plaintiffs because it is unique, secret, extremely difficult, costly, and time-consuming to develop, and because such information is either not easy, or is impossible, to ascertain independently.

45. Plaintiffs have exercised reasonable efforts to preserve the secrecy of the CinéWorld Confidential Information. Among other such measures, Plaintiffs' staff and independent contractors, in consideration for their services and receipt of the CinéWorld Confidential Information, are required by Plaintiffs to sign agreements not to divulge to any unauthorized person, or to use for any unauthorized purpose, any secret, confidential or private information connected with the business of Plaintiffs. In addition, Plaintiffs have limited access to the CinéWorld Confidential Information to those staff members and independent contractors who have a "need to know" such information.

46. As a result of their business relationship with Plaintiffs, Defendants had access to Plaintiffs' most valuable trade secrets as described herein. Defendants continue to have knowledge of that information, notwithstanding the fact that they are now competitors of Plaintiffs by virtue of Defendants misappropriation and use of significant aspects and elements of the CinéWorld Confidential Information in and as part of the Vzbl VR Program.

47. Plaintiffs are informed and believe and based thereon allege that Defendants, and each of them, knowingly conspired to use and misappropriate, and have actually misappropriated and threaten to misappropriate Plaintiffs' trade secrets in violation of UTSA. Defendants have

13

COMPLAINT

improperly used and/or disclosed Plaintiffs' trade secrets to others in violation of the UTSA, as well as their agreements with Plaintiffs, namely the NDA and the Agreement. Defendants have and will continue to wrongfully use, misappropriate and commercially exploit Plaintiffs' trade secrets unless enjoined. Defendants, by their conduct to date, have demonstrated that they cannot be counted on to avoid disclosing and utilizing Plaintiffs' trade secrets.

48.     Plaintiffs are further informed and believe that Defendants, through Longano and employees and agents of each of the Defendants, conspired with one another to design, effectuate, implement, cover up and/or profit from the misappropriation of the CinéWorld Confidential Information.

49.     As a proximate result of Defendants' misappropriation and threatened misappropriation of Plaintiffs' trade secrets, Plaintiffs have suffered, and will continue to suffer, irreparable harm, as well as damages in an amount to be proven at the time of trial, but which are substantial and in excess of the minimum jurisdictional amount of this court.

50.     Because Plaintiffs' remedy at law is inadequate, Plaintiffs seek temporary, preliminary and permanent injunctive relief. Plaintiffs are threatened with losing customers, technology, its competitive advantage, its trade secrets and goodwill in amounts which may be impossible to determine, unless Defendants are enjoined and restrained by order of this Court, as alleged above.

51.     Defendants' actual and threatened misappropriation has been willful and malicious in light of their deliberate violation of their contractual obligations. Therefore, Plaintiffs are entitled to an award of punitive or treble damages and attorneys' fees pursuant to Civil Code section 3426.3, subd. (c) and Civil Code sections 3426.4.

**THIRD CAUSE OF ACTION**

**(For Breach of Contract – Against Longano and MPL)**

52.     Plaintiffs reallege, adopt and incorporate by reference, each and every allegation contained in Paragraphs 1 through 32, inclusive, of this Complaint as if fully set forth herein.

///

///

COMPLAINT

**Breach of the NDA**

53.    As alleged hereinabove, Plaintiffs and Longano entered into the written NDA. As further alleged hereinabove, Longano has materially breached the NDA for the benefit of Longano, BVR and MPL by, among other things, (I) improperly disclosing the CinéWorld Confidential Information with unauthorized third parties, and (ii) misappropriating and using the CinéWorld Confidential Information to create a virtual reality program that directly competes with Plaintiffs, thereby exploiting and deriving a benefit from the CinéWorld Confidential Information.

54.    Plaintiffs have performed all conditions, covenants and promises required pursuant to the terms of the NDA, except to the extent such performance was waived, excused or prevented by reason of acts or omissions of Longano.

55.    As a direct and proximate result of the material breaches of the NDA by Longano, Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial, but believed to be in excess of $50,000,000. When Plaintiffs have ascertained the full amount of their damages, they will seek leave of Court to amend this Complaint accordingly. As stated above, Plaintiffs are informed and believe that Defendants, and each of them, conspired to misappropriate and use the CinéWorld Confidential Information for their own commercial use and benefit, thereby breaching the NDA. Accordingly, Defendants, as co-conspirators as alleged hereinabove, are jointly and severally liable for the material breach of the NDA.

**Breach of the Agreement**

56.    As alleged hereinabove, Plaintiffs and MPL, through Longano, entered into the written Agreement. As further alleged hereinabove, MPL materially breached the provisions of the Agreement for the benefit of Longano, MPL and BVR by, among other things, (I) using and misappropriating Plaintiffs' unique proprietary trade secrets and the CinéWorld Confidential Information to create, market and exploit the competing Vzbl VR Program, (ii) disclosing the CinéWorld Confidential Information to unauthorized third parties, (iii) refusing to merge BVR and CinéWorld, and (iv) failing to provide Plaintiffs with any high-quality, technologically-advanced Artwork, as promised.

///

15

57. Plaintiffs have performed all conditions, covenants and promises required pursuant to the terms of the Agreement, except to the extent such performance was waived, excused or prevented by reason of acts or omissions of MPL.

58. As a direct and proximate result of the material breaches of the Agreement by MPL, Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial, but believed to be in excess of $50,000,000. When Plaintiffs have ascertained the full amount of their damages, they will seek leave of Court to amend this Complaint accordingly. As stated above, Plaintiffs are informed and believe that Defendants, and each of them, conspired to misappropriate and use the CinéWorld Confidential Information for their own commercial use and benefit, thereby breaching the Agreement. Accordingly, Defendants, as co-conspirators as alleged hereinabove, are jointly and severally liable for the material breach of the Agreement.

## FOURTH CAUSE OF ACTION

### (For Violation of California Business & Professions Code § 17200, *et. seq.* –

### Against all Defendants)

59. Plaintiffs reallege, adopt and incorporate by reference, each and every allegation contained in Paragraphs 1 through 58, inclusive, of this Complaint as if fully set forth herein.

60. As alleged hereinabove, Defendants have engaged in unlawful, fraudulent and/or unfair business practices and have utilized certain improper, fraudulent and/or unlawful means to unjustly enrich themselves, and to cause deliberate injury to Plaintiffs, by, among other things, the conduct set forth in Paragraphs 13 through 40 above. Indeed, Defendants, and each of them, knowingly and willfully conspired and agreed to, and in fact did, misappropriate and commercially use the CinéWorld Confidential Information in a scheme to unfairly compete with Plaintiff and with the intent to injure Plaintiff for their economic gain.

61. California Business and Professions Code §§ 17200, *et seq.* provide a private right of action to remedy "any unlawful, unfair or fraudulent business act or practice . . . ." By engaging in the acts and omissions described hereinabove, Defendants have committed unlawful, fraudulent or unfair business practices in violation of California Business and Professions Code §§ 17200, *et seq.*

COMPLAINT

62.    As a direct and proximate result of Defendants' violations of California Business and Professions Code §§ 17200, *et seq.*, as described herein, Plaintiffs are entitled to restitution which Plaintiffs believe to be at least $275,000.

### FIFTH CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Advantage Against all Defendants)**

63.    Plaintiffs reallege, adopt and incorporate by reference, each and every allegation contained in Paragraphs 1 through 58, inclusive, of this Complaint as if fully set forth herein.

64.    Plaintiffs have successfully fostered business relationships with certain business partners and these business relationships contain probable future economic benefits to Plaintiffs in that the relationships would allow Plaintiffs to economically profit from the business relationships and attract and provide services to clients and business partners on a continuing basis.

65.    Plaintiffs are informed and believe that Defendants knew of these business relationships and that they jointly conspired to intentionally disrupt one or more of Plaintiffs' business partnerships and relationships by, among other things, meeting with and soliciting Plaintiffs' potential business partners for their own commercial benefit by using and disclosing the CinéWorld Confidential Information, and incorporating aspects and elements of the CinéWorld Confidential Information into the Vzbl VR Program, thereby diminishing the value of the CinéWorld VR Program, and by using means which are improper under California's Uniform Trade Secrets Act (Civil Code Section 3426 et seq.), and in violation of the NDA and Agreement.

66.    As a proximate result of the actions of Defendants as alleged herein, Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial, but believed to be in excess of $50,000,000. When Plaintiffs have ascertained the full amount of their damages, they will seek leave of Court to amend this Complaint accordingly.

67.    By engaging in the aforesaid conduct, Defendants are guilty of oppression and/or fraud and/or malice and/or despicable conduct in that they acted with the intent to injure Plaintiffs' business. Therefore, Plaintiffs are entitled to an award of exemplary and punitive damages in an amount sufficient to punish these defendants for their wrongful conduct.

///

17

## SIXTH CAUSE OF ACTION

### (For Negligent Misrepresentation Against All Defendants)

68.    Plaintiffs reallege, adopt and incorporate by reference, each and every allegation contained in Paragraphs 1 through 32, inclusive, of this Complaint as if fully set forth herein.

69.    Plaintiffs are informed and believe and based thereon allege that if Defendants, and each of them, did not intentionally make the misrepresentations alleged hereinabove, Defendants negligently and carelessly made the misrepresentations to Plaintiffs.

70.    Plaintiffs are informed and believe and based thereon allege that the above misrepresentations were made by Defendants, and each of them, without any reasonable ground for believing them to be true.

71.    Plaintiffs are informed and believe and based thereon allege that each of the above representations were made by Defendants, and each of them, with an intent to induce Plaintiffs to rely thereon. At the time or times Defendants made the aforesaid misrepresentations, Plaintiffs were ignorant of the falsity of Defendants' representations and reasonably and justifiably believed them to be true. In reliance on Defendants' representations, Plaintiffs were induced to enter into the NDA and Agreement.

72.    As a direct, proximate and reasonably foreseeable result of Defendants' negligent misrepresentations, Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial, but believed to be in excess of $50,000,000. When Plaintiffs have ascertained the full amount of their damages, they will seek leave of Court to amend this Complaint accordingly.

## SEVENTH CAUSE OF ACTION

### (Breach of Covenant of Good Faith and Fair Dealing Against All Defendants)

73.    Plaintiffs reallege, adopt and incorporate by reference, each and every allegation contained in Paragraphs 1 through 72, inclusive, of this Complaint as if fully set forth herein.

74.    The Agreement and NDA each contained an implied covenant that each party to the Agreement and NDA will conduct itself in good faith and will fairly deal with the other and, further, that the parties will not interfere with or deprive the others of the benefits of the Agreement or NDA. Pursuant to the implied covenant, Defendants had a duty to conduct themselves in accordance with

18

COMPLAINT

the terms and conditions of the Agreement and NDA, and to otherwise not engage in acts which would impair or harm Plaintiffs' rights under the Agreement or NDA and to receive the expected consideration thereunder.

75. By virtue of the relationship between Plaintiffs, on the one hand, and Defendants, on the other hand, Plaintiffs placed their trust and confidence in Defendants to perform all of their duties and obligations pursuant to the terms and conditions of the Agreement and NDA, and to honor the implied covenant to act in good faith in dealing with Plaintiffs, and to not take actions which would impair or harm Plaintiffs' rights.

76. Plaintiffs are informed and believe and based thereon allege that, by engaging in the conduct herein alleged and by improperly sharing the CinéWorld Confidential Information with unauthorized third parties as well as utilizing the CinéWorld Confidential Information to create a program that directly competes with Plaintiffs, Defendants have breached the covenant of good faith and fair dealing owed to Plaintiffs by virtue of the terms and conditions of the Agreement and NDA, and have acted in bad faith by preventing Plaintiffs from receiving the full benefits and consideration under the Agreement and NDA.

77. Plaintiffs are informed and believe and based thereon allege that Defendants pursued this course of conduct in bad faith with the intent to interfere with, injure and frustrate Plaintiffs enjoyment of the benefits and rights conferred pursuant to the terms of the Agreement and NDA.

78. As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial, but believed to be in excess of $50,000,000. When Plaintiffs have ascertained the full amount of the damages, they will seek leave of the Court to amend this Complaint accordingly.

## EIGHTH CAUSE OF ACTION

### (Specific Recovery of Personal Property Against All Defendants)

79. Plaintiffs reallege, adopt and incorporate by reference, each and every allegation contained in Paragraphs 1 through 32, inclusive, of this Complaint as if fully set forth herein.

80. Plaintiffs are, and at all times herein mentioned were, the sole and exclusive owners of personal property described as all artwork created, licensed, obtained and/or developed by

19

Defendants which incorporate and/or rely on the CinéWorld Confidential Information, including, but not limited to, any and all virtual environments, virtual avatars, virtual animations and virtual clothing created, licensed, obtained and/or developed by Defendants for Plaintiffs, as well as all other work performed by Defendants, pursuant to the Agreement (the "CinéWorld Property").

81.    As a result of the payment of $275,000 by Plaintiffs to Defendants, and the termination of the Agreement, Plaintiffs are entitled to the immediate and exclusive possession of all CinéWorld Property in the possession, custody or control of Defendants.

82.    Plaintiffs have made a demand for delivery the above-described CinéWorld Property, but Defendants have refused to provide it to Plaintiffs and continue to withhold possession of it from Plaintiffs.    Notwithstanding the foregoing, any demand was futile because Defendants have repeatedly refused to comply with any of the demands made by Plaintiffs, thereby necessitating the filing of this lawsuit.

83.    As a direct and foreseeable result of Defendants' wrongful possession and detention of the CinéWorld Property described above, Plaintiffs have suffered damages in excess of the jurisdictional minimum of this Court, according to proof.

84.    Plaintiffs are informed and believe and based thereon allege that Defendants, in doing the things herein alleged, acted willfully, maliciously, oppressively and with full knowledge of the adverse effects of their actions on Plaintiffs, and with willful and deliberate disregard to the consequences to Plaintiffs such as to constitute oppression, fraud or malice, and that such actions were authorized, ratified and adopted by the officers, directors and/or managing agents of Defendants.    As a direct result of the willful and malicious conduct of Defendants, Plaintiffs are entitled to exemplary and punitive damages in an amount to be determined as appropriate by this Court.

## NINTH CAUSE OF ACTION

### (Preliminary and Permanent Injunctive Relief Against All Defendants)

85.    Plaintiffs reallege, adopt and incorporate by reference, each and every allegation contained in Paragraphs 1 through 84, inclusive, of this Complaint as if fully set forth herein.

///

20

COMPLAINT

86.    Plaintiffs seek a preliminary and permanent injunction and temporary restraining order to enjoin the Defendants from performing any work or services based on or derived from use of the CinéWorld Confidential Information; from creating, developing or exploiting a virtual reality program, product or software incorporating any aspects or elements of the CinéWorld Confidential Information, including without limitation in or as part of any aspect of the Vzbl VR Program; communicating or divulging to others, or aiding, abetting or permitting any other person or entity to use any of the CinéWorld Confidential Information; engaging in any other acts that amount to unfair competition with Plaintiffs; and, otherwise violating the terms of the NDA and Agreement.

87.    Plaintiffs have demanded that Defendants confirm that they will cease and desist from performing any work or services derived from use of the CinéWorld Confidential Information; or creating, developing or exploiting a virtual reality program, product or software incorporating any aspects or elements of the CinéWorld Confidential Information, including without limitation in or as part of any aspect of the Vzbl VR Program; communicating or divulging to others, or aiding, abetting or permitting any other person or entity to use any of the CinéWorld Confidential Information; engaging in any other acts that amount to unfair competition with Plaintiffs; and, otherwise violating the terms of the NDA and Agreement, by way of a letter dated March 10, 2016. However, notwithstanding the aforesaid demands, Defendants have refused to so confirm.

88.    Unless and until enjoined and restrained by this Court, Plaintiffs believe that Defendants' misappropriation of the CinéWorld Confidential Information will cause Plaintiffs to suffer grave and irreparable injury, in that the value and uniqueness of the CinéWorld VR Program will be destroyed and Plaintiffs are threatened with losing business partners, their competitive advantage, their trade secrets and goodwill in amounts which may be impossible to determine, unless Defendants are enjoined and restrained by order of this Court

89.    Plaintiffs are likely to prevail on the merits of this action and Plaintiffs have no plain, speedy, or adequate remedy at law. Accordingly, injunctive relief is authorized by California Code of Civil Procedure section 526 as well as Civil Code § 3426.2.

///

///

21

COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

**AS TO THE FIRST CAUSE OF ACTION:**

1. For general and special damages in an amount not less than Fifty Million Dollars ($50,000,000), in accordance with proof at trial, together with interest thereon at the legal rate;

2. For punitive or exemplary damages pursuant to California Code of Civil Procedure Section 3294(c);

**AS TO THE SECOND CAUSE OF ACTION:**

3. For general and special damages in an amount not less than Fifty Million Dollars ($50,000,000), in accordance with proof at trial, together with interest thereon at the legal rate;

4. For attorneys fees and costs pursuant to Civil Code § 3426.4;

5. For punitive or exemplary damages pursuant to California Code of Civil Procedure Section 3294(c) and Civil Code § 3426.3(c);

**AS TO THE THIRD CAUSE OF ACTION:**

6. For general and special damages in an amount not less than Fifty Million Dollars ($50,000,000), in accordance with proof at trial, together with interest thereon at the legal rate;

**AS TO THE FOURTH CAUSE OF ACTION:**

7. For restitution in an amount not less than Two Hundred and Seventy-Five Thousand Dollars ($275,000), in accordance with proof at trial, together with interest thereon at the legal rate;

**AS TO THE FIFTH CAUSE OF ACTION:**

8. For general and special damages in an amount not less than Fifty Million Dollars ($50,000,000), in accordance with proof at trial, together with interest thereon at the legal rate;

9. For punitive or exemplary damages pursuant to California Code of Civil Procedure Section 3294(c);

///

///

22

**AS TO THE SIXTH CAUSE OF ACTION:**

10.    For general and special damages in an amount not less than Fifty Million Dollars ($50,000,000), in accordance with proof at trial, together with interest thereon at the legal rate;

**AS TO THE SEVENTH CAUSE OF ACTION:**

11.    For general and special damages in an amount not less than Fifty Million Dollars ($50,000,000), in accordance with proof at trial, together with interest thereon at the legal rate;

**AS TO THE EIGHTH CAUSE OF ACTION:**

12.    For possession of the personal property described above;

13.    For punitive or exemplary damages pursuant to California Code of Civil Procedure Section 3294(c);

**AS TO THE NINTH CAUSE OF ACTION:**

14.    For a temporary restraining order, preliminary injunction, and permanent injunction pursuant to Civil Code § 3426.2 enjoining Defendants, and each of them, individually and jointly, and their agents and those acting in concert with them from:

(a)    Performing any work obtained and/or created through use of the CinéWorld Confidential Information;

(b)    creating, using or exploiting any virtual reality program, product or software that incorporates or uses any aspects or elements of the CinéWorld Confidential Information, including without limitation in or as any part or aspect of the Vzbl VR Program;

(c)    continuing to work on the Vzbl VR Program, as well as the distribution, marketing, advertising, and/or sale of the Vzbl VR Program, or anything substantially similar thereto;

(d)    Misappropriating, utilizing in any manner and/or disclosing to others, any of the CinéWorld Confidential Information;

(e)    Disclosing, communicating or divulging to others, or aiding, abetting or permitting any other person or entity to use, any of the CinéWorld Confidential Information;

(f)    Engaging in any other acts that amount to unfair competition with Plaintiffs; and

(g) Otherwise violating the terms of the NDA and Agreement.

///

COMPLAINT

**AS TO ALL CAUSES OF ACTION:**

15.    For all costs of suit;

16.    For pre-judgment interest at the maximum legal rate;

17.    For post-judgment interest at the maximum legal rate; and

18.    For such other and further relief as deemed just and proper.

DATE:  April 11, 2016

LAVELY & SINGER
PROFESSIONAL CORPORATION
BRIAN G. WOLF
TODD. S. EAGAN
LINDSAY MOLNAR

By:_____
        BRIAN G. WOLF
Attorneys for CINEWORLD LLC AND
CINÉMOI NORTH AMERICA, LLC

24

COMPLAINT

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs CINÉWORLD LLC and CINÉMOI NORTH AMERICA, LLC demand a trial by jury.

DATE: April 11, 2016

LAVELY & SINGER
PROFESSIONAL CORPORATION
BRIAN G. WOLF
TODD. S. EAGAN
LINDSAY MOLNAR

By:_____
        BRIAN G. WOLF
Attorneys for  CINÉWORLD LLC AND
CINÉMOI NORTH AMERICA, LLC

25

COMPLAINT

# EXHIBIT A

NON-DISCLOSURE AGREEMENT

THIS NONDISCLOSURE AGREEMENT, dated as of _05/12/15_ , is made by and between Cinemoi North America, LLC, its affiliates, subsidiaries, officers, directors, successors and assigns, whose address is 6380 Wilshire Blvd., Suite 910, Los Angeles, CA 90048 ("Cinemoi"), on the one hand, and Nicholas Longano whose address is 714 Alston Road, Santa Barbara, CA 93108 ("Company"), on the other hand.

Cinemoi and Company are evaluating certain potential business relationships and transactions between them (the "Business Opportunity"), In connection therewith each may wish to share certain Confidential Information (as defined below) with the other on the terms and conditions provided herein. For each piece of information made available hereunder, the party making such information available shall be referred to as "Discloser" and the other party as "Recipient." In consideration of the promises contained herein, and for other good and valuable consideration, Cinemoi and Company agree as follows:

1. Confidential Information. "Confidential Information" as used in this Agreement shall mean any and all information that has been designated as "Confidential" by the Discloser, regardless of the form or manner in which it is disclosed, relating to Discloser's business, operations, products, systems, and/or agreements between the parties, including, without limitation:

a. Proprietary information, technologies, know-how, processes, business models, software and related documents, research, design details, specifications, and other information related to the current, future and proposed products and services of Discloser;

b. Analyses, projections, statistics, forecasts, and other financial and accounts information; or

c. Customer lists and other customer information, sources of supply, sales, product, and marketing data and plans, business plans and models, and personnel and shareholder data.

d. Information which has not been designated as confidential by the discloser but which by its nature or under the circumstances of its disclosure should be regarded by the Recipient as confidential.

2. Obligations of Recipient.  During the Term, Recipient shall:

a. Use Confidential Information, including making any copies thereof solely for the purposes of evaluating a potential business relationship or transaction between the parties and/or of implementing such relationship or transaction following execution of a definitive agreement therefore.

b. Not disseminate or disclose any Confidential Information to any third party, other than to its employees and representatives that need to know such information and have agreed to be bound by the terms hereof, unless required by law or pursuant to a valid court order, in which case Recipient shall give Discloser reasonable notice prior to such disclosure and shall cooperate (at discloser's expense) to assist Discloser in obtaining a protective order or equivalent.

c. Use the same degree of care to limit disclosure of Confidential Information as it uses to protect its own proprietary and confidential information; and

d. Give notice to Discloser of any unauthorized use or disclosure of Confidential

1

Information, and assist Discloser in remedying any such unauthorized use or disclosure.

**3. Exclusions from Confidential Information.** As used herein, "Confidential Information" does not include Information that Recipient can demonstrate:

a. Is or becomes publicly disclosed or available with no breach hereof by or on behalf of Recipient;

b. Was previously in Recipient's possession with no obligation to maintain confidentiality;

c. Was received by Recipient from a third party not under any obligation of confidentiality to Discloser; or

d. Was developed by employees and/or representatives of Recipient independently of, and without reference to, any Confidential Information.

**4. Ownership of Confidential Information; Return of Property.** All Confidential Information is and shall remain the property of Discloser, and no license or other rights to Confidential Information is granted or implied hereby. At the request of Discloser, Recipient shall return all Confidential Information and related materials (including those generated internally by Recipient as described above) and any copies thereof, and permanently delete and destroy all Confidential Information stored digitally or electronically.

**5. No Warranty.** All Confidential Information is provided "AS IS" and without any warranty, express, implied or otherwise, regarding its accuracy or performance. No party shall have any liability hereunder resulting from the selection or content of any Confidential

Information or the use thereof by the other party.

**6. Term.** This Agreement shall commence upon the full execution of this Agreement and continue for two (2) years thereafter. Notwithstanding the foregoing, any and all materials will be immediately returned and the contents are to remain confidential.

**7. Non-Circumvention.** The Recipient shall not at any time prior to the expiration of two (2) years from the date of this Agreement, without the prior written consent of the Discloser, by-pass, compete, avoid or circumvent the Discloser relative to the Business Opportunity, including by utilizing any of the Confidential Information or by otherwise exploiting or deriving any benefit from the Confidential Information.

**8. No Assignment.** Neither party will assign or transfer any rights or obligations under this Agreement without the prior written consent of the other party, except that Company shall have the right to assign this Agreement and any rights hereunder without Cinemoi's consent to any entity that assumes control of Company assets or any other similar extraordinary transaction.

**9. Notices.** Any notice required or permitted by this Agreement shall be in writing and shall be deemed given as follows: (i) upon delivery when delivered personally; (ii) the next business day when delivered by overnight courier with written verification of receipt; (iii) upon delivery when sent by facsimile transmission with printed proof of electronic transmission; or (iv) three (3) business days following mailing by certified or registered mail, postage prepaid, return receipt requested. Notices shall be sent

2

to the parties' respective addresses or fax numbers set forth herein, or such other address and/or number as that party may specify by notice.

**10. Governing Law; Jurisdiction.** This Agreement shall be governed in all respects by the laws of the State of California, without giving effect to choice of law principles. The parties hereby irrevocably consent to the exclusive jurisdiction of the state and federal courts located in Los Angeles County for any matter arising from the Agreement.

**11. Miscellaneous.**

♦ Should any provisions of the Agreement be held by a court of law to be illegal, invalid or unenforceable, the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby.

♦ The waiver by Discloser of a breach of any provision of the Agreement by Recipient shall not operate or be construed as a waiver of any other or subsequent breach by Recipient.

♦ This Agreement constitutes the entire agreement with respect to the subject matter hereof, supersedes all other agreements concerning Confidential Information, and can only be amended in writing signed by the parties.

♦ The parties are independent contractors, and no partnership, joint venture or other relationship is contemplated or created hereby.

IN WITNESS WHEREOF, the parties have caused this agreement to be executed, effective as of the date first written above.

**Cinemoi North America, LLC**

By: _Roderick M. Sherwood III_

Name: _Roderick M. Sherwood III_

Title: _Chairman and CEO_

_Nicholas Longano_____(Company)

By: _____

Name: _Nicholas Longano_____

Title: _Independent Contractor_

3

# EXHIBIT B

Memorandum of Understanding
CineWorld, LLC and Montecito Productions, LLC.

This Memorandum of Understanding ("Agreement") summarizes the principle terms of a proposed transaction and work made for hire with respect to the parties and is effective as of September 10, 2015 ("Effective Date") by and between Montecito Productions, LLC, ("MP") and CineWorld, LLC, a Delaware entity or its affiliated entities (the "Company"). Each of MP and Company shall be referred to herein individually as a "Party" and collectively as "Parties."

In consideration of the time and expense devoted with respect to this transaction, certain provisions of this Agreement, including, but not limited to: confidentiality, non-disclosure, counsel and expenses provisions of this Agreement shall be binding obligations of the Parties whether or not this Agreement is consummated. This Agreement is conditioned upon the completion of due diligence, legal review, and documentation that is satisfactory to the Parties. This Agreement shall be governed in all respects by the laws of the State of California.

Capitalized terms not otherwise defined herein shall have the meanings set forth in other agreements set forth between the Parties.

### THE TRANSACTION

*Product (Artwork")*   MP's role is to provide the CineWorld product artwork ("Artwork"), which is defined as all virtual environments, virtual avatars, avatar animations, and virtual clothing.

*Compensation*   The Company agrees to compensate MP a sum of fifty five thousand dollars ($55,000) ("Amount Due") per month on a work made for hire to create the Artwork that will be used in the creation of a project called CineWorld. Unless otherwise requested by MP, all Amount Due shall be made in U.S. Dollars sent via check handed directly to MP or sent to this address: 714 Alston Road, Montecito, CA 93108 or by wire transfer. Amount Due shall be paid on the 10th day of each month. If any amount payable to MP is subject to any tax, charge or duty in the territory (excluding any income tax imposed by the State of California or the United States and payable by MP), Company shall furnish to MP official proof of such payment.

*Term*   The initial term of this Agreement shall commence on the Effective Date and shall continue through June 30, 2016, unless sooner terminated by either Party in accordance with the terms and conditions of this Agreement ("Term"). The Term of this Agreement may be extended solely by a written agreement executed by an authorized representative of each Party.

*Valuation*   Parties shall cooperate and agree with Houlihan's Valuation Advisors ("Houlihan') regarding the valuation of Company.

1

| | |
|---|---|
| *Deliverables* | Following this Agreement, Parties shall draft a scope of work as Exhibit A ("Exhibit A") outlining specific details of this Agreement and specific completion dates and times regarding the Artwork. |
| *Relationship of the Parties* | MP and Company hereby acknowledge and agree that MP's relationship to Company is that of an independent contractor, and not an agent, employee or servant, and MP will be solely responsible for payment of MP's own taxes applicable to Amount Due. In the ordinary course of business, MP may perform services for parties other than Company and is not precluded from doing so by this Agreement. MP shall have the sole and exclusive right and responsibility to control, and to determine, the method, mode, means, and manner, by which MP, its agents, employees, representatives or subcontractors, perform this Agreement required herein, except as otherwise set forth herein. Company shall have no voice in the selection, discharge, supervision or control of MP's agents, employees, representatives or subcontractors, or in fixing their number, compensation, or hours of service. MP shall perform all work required herein as an independent contractor of Company and shall remain at all times as to Company a wholly independent contractor with only such obligations as are consistent with that role. |
| *Representations & Warranties:* | Standard representations and warranties by the Parties to be included in the definitive documentation. |
| *Due Diligence* | The transactions contemplated by this Agreement are subject to the satisfactory completion of due diligence by Parties and negotiation of definitive documents. |
| *Intellectual Property* | All Artwork and other work delivered for CineWorld under this Agreement, including the work related to the CineWorld brand, are the Intellectual Property of Cinemoi. |

Company shall own and MP hereby exclusively grants to Company all rights, title and interest of every kind and character in perpetuity throughout the world in and to all of the results and proceeds of MP's services hereunder (collectively, the "Material"), including all copyrights, renewals and extensions of copyrights, all of which shall be deemed works-made-for-hire specially commissioned for use by Company, and Company shall be deemed the author thereof for all purposes. To the extent, under the applicable law, the Material may not be considered a work-made-for-hire, MP hereby transfers and conveys to Company, to the maximum extent permitted by the applicable law, all of MP's right, title, and interest in and to the Material so that Company shall be the sole owner of all copyrights therein. In this regard, MP grants to Company the sole and exclusive right to exhibit, record, reproduce, broadcast, televise, transmit, distribute, advertise, exploit, publicize and use the Material and each and every part thereof, for any purpose, in any manner, by any means, methods or media, whether now known or hereafter devised, throughout the world, in perpetuity. MP also grants to Company and Company shall have the right to adapt, change, revise, delete from, add to or rearrange the Material and the right to assign to any assignee the right to utilize any of the Material. MP waives all "moral rights" of authors and acknowledges that MP has no separation of rights with respect to any of the Material. MP agrees to execute and deliver to Company such additional documents consistent herewith reasonably necessary to evidence or effectuate the purposes or intent of this Agreement, and MP hereby irrevocably appoints

2

Company as MP's attorney in fact to execute and deliver all such documents that MP fails, refuses or neglects to do so within ten (10) business days of Company's request.

*n/fl  RMS*

*Merger*

*RMS*  *n/fl  CineWorld, LLC*

Parties shall proceed with a merger in good faith. Upon a ~~potential~~ merger of the Parties, MP shall be provided with an eighteen percent (18%) ownership interest in ~~Company~~ based on the Houlihan Loukey valuation using both the viewer multiples and discounted cash flow valuation methodologies.

*Counsel & Expenses*

MP shall pay all of its own expenses, including but not limited to, legal and administrative costs of this Agreement unless stated otherwise in this Agreement. Company shall pay all of its own expenses, including but not limited to, legal and administrative costs of this Agreement unless stated otherwise in this Agreement.

Counsel:    Dongell, Lawrence, & Finney, LLP.
707 Wilshire Boulevard, 45th Floor
Los Angeles, CA. 90017
Tal C. Finney, tfinney@dlflawyers.com
Phone: (310) 729-7266

*Confidential Information*

"Confidential Information" means all information, whether in written, verbal, graphic, electronic, data or any other form, including, without limitation, proprietary, technical, financial information, business plans, forecasts, retail strategies and projections or analyses, customer, personnel, development, marketing sales, operating, performances, cost, know-how, business and process information, software, computer programming techniques, design, research, documents prepared by either Party and all record bearing media containing or disclosing such information and techniques, furnished, made available or otherwise disclosed at any time (whether before or after the date of this Agreement) by or on behalf of either Party or any of its directors, officers, affiliates, employees, shareholders, unitholders, agents, advisors or representatives (collectively, "Representatives") to either Party, all information which has not been designated as confidential by the discloser, but which by its nature or under the circumstances of its disclosure should be regarded by the recipient as confidential, together with any and all notes, analyses, compilations, studies, interpretations or other documents prepared by or on behalf of either Party that contain, reflect or are otherwise based upon, in whole or in part, such information or either Party's review of or interest in either Party or the potential transaction pursuant to this Agreement.  Confidential Information shall also include the fact that Confidential Information has been made available to either Party, that discussions, negotiations or investigations relating to a potential transaction are taking place or have taken place, and any of the terms, conditions or other facts with respect to any potential transaction, including the status of the discussions, negotiations or investigations relating thereto.  When appropriate, the term shall also include any samples, models or prototypes, or parts thereof. Confidential Information shall include any written or electronically generated information provided by one Party to the other.

*Non-Disclosure*

Parties will not disclose any Confidential Information except to either Party's representatives who need to know such information for the permissible, subject to the following sentences of this paragraph. Each of the Party's representatives shall be informed by the other Party of the confidential nature of such information and shall be directed to treat such information in confidence in

3

accordance with this Agreement, and either Party shall be liable to the other Party for any breaches of this Agreement. In any event, Parties agree, at either Party's sole expense, to take all reasonable measures (including but not limited to court proceedings) to restrain the other Party's representatives from prohibited or unauthorized use of any Confidential Information. In the event that either Party is requested or required by law, regulation, regulatory authority or other applicable judicial or governmental order to disclose any Confidential Information, the other Party shall (a) provide other Party with prompt written notice of such request or requirement, (b) consult with other Party and its counsel on the advisability of taking legally available steps to resist or narrow such request and (c) assist other Party, at other Party's expense, in seeking a protective order or other appropriate remedy to limit or minimize such use. If a protective order or other remedy is not obtained and other Party is, based on the reasonable advice of counsel, legally required to disclose Confidential Information, other Party may disclose to the applicable tribunal only that portion of the Confidential Information that other Party is so legally required to disclose and will exercise reasonable efforts, upon either party's written request, to obtain assurance that confidential treatment will be accorded to that portion of the Confidential Information disclosure.

***No Shop:*** The Parties agrees to work in good faith and expeditiously towards this Agreement. For the purpose of this transaction and this Agreement, the Parties agree that it will not, for a period of four (4) weeks from the Effective Date, take an action to solicit, initiate, encourage or assist the submission of any proposal, negotiation or offer from any person or entity other than from either Party.

***Expiration:*** If not executed, this Agreement expires on September 15, 2015.

IN WITNESS WHEREOF, the Parties have executed this Agreement on September 10, 2015.

MONTECITO PRODUCTIONS LLC
MP- Company (If applicable):

CEO
MP- Position (If applicable):

NICHOLAS LONGANO
MP- Name:

MP- Signature:

I have authority to bind __NL__ (Initials)

_____
(If applicable)

Cinemoi North America, LLC/CineWorld LLC
Company- Company (If applicable):

Chairman and CEO
Company- Position (If applicable):

Roderick M. Sherwood III
Company- Name:

Company- Signature:

I have authority to bind __RMS__ (Initials)

_____
(If applicable)

4