**Michael S. Traylor, Esq. (SBN 136814)**
**9018 Balboa Blvd., Suite 352**
**Northridge, CA. 91325**
**(310) 401-6610 telephone**
**(661) 296-9965 facsimile**
**traylorlawoffice@gmail.com  e-mail**

**Attorney for Defendants Montecito Productions, LLC, Nicholas Longano and Brilliant VR, Inc.**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| **CINEWORLD, LLC ET AL.**<br><br>      **Plaintiffs**<br><br> vs.<br><br>**MONTECITO PRODUCTIONS, LLC ET AL.**<br><br>     **Defendants.** | Case No. 2:16-cv-03080<br><br>**DEFENDANTS COUNTER-CLAIM AGAINST PLAINTIFFS CINEWORLD, LLC ET AL FOR:**<br><br>**1. DECLARATORY RELIEF UNDER THE COPYRIGHT ACT; AND**<br><br>**2. BREACH OF CONTRACT**<br><br>**[Federal Question and Diversity Jurisdiction]**<br><br>**[Removed from Superior Court of California, County of Los Angeles (West) Case Number SC125682**<br><br>**Complaint Filed: April 11, 2016** |

1

TO: THE COURT, THE CLERK OF THE COURT AND TO ALL PARTIES AND THEIR ATTORNEY(S) OF RECORD:

COMES NOW, Defendants Nicholas Longano, Brilliant VR, Inc. and Montecito Productions, LLC, a Delaware Corporation, making their Counter-Claims against Plaintiffs Cineworld, LLC and Cinemoi North America, LLC, upon information and belief, as follows:

### PARTIES, JURISDICTION AND VENUE

1. Defendants are informed and believe that Cinemoi North America, LLC ("Cinemoi") is a California limited liability company which is organized and operates entirely in the State of California. CineWorld, LLC ("CineWorld"), while purporting to be a Delaware limited-liability company which is wholly owned by Cinemoi, is actually a shell entity which is completely controlled by Cinemoi, has no independent interests and operates completely within the State of California. As such, Cinemoi is a dispensable party and their only purpose in this action is to attempt to avoid diversity.  Like Cinemoi, its principals (who are being named as Cross-Defendants) in Defendants' cross-complaint are citizens of the State of California.

2. Defendant Montecito Productions, LLC is a Delaware corporation with its principal place of business in the State of New York. Likewise, Defendant Nicholas Longano is a citizen and resident of the State of New York. Brilliant VR, Inc. is a Delaware corporation which was fraudulently added by Plaintiffs.

3. A dispute (the "Dispute") has arisen regarding Plaintiffs' contention that Defendants (and each of them) are in possession to materials which, pursuant to the Copyright Act (17 U.S.C. 101 et seq.) constitutes "works made-for-hire" which are the property of the Plaintiffs pursuant to the agreement (the "Agreement") referenced in (and attached to) the Complaint in

this matter[1].  Defendants contend that any and all such materials which may be considered "works made-for-hire" pursuant to the Agreement have been delivered to Plaintiffs. Notwithstanding the foregoing, Plaintiffs continue to make claims for and seek delivery of materials which are not "works made-for-hire". Such materials include Defendants' proprietary technology and even a platform which is the property of a third party (non-party to this litigation).

4.  Declaratory Relief is sought in connection with the Dispute. The Court's determination of the copyright ownership in question will terminate the controversy regarding all of the issues presented by the Complaint and this Counter-Claim (with the exception of the balance due under the Agreement).  The Dispute is of a justiciable nature and is dependent upon a resolution of which materials are included within the definition of works made-for-hire pursuant to the Copyright Act. The outcome of such determination has a practical impact on Plaintiffs and Defendants and while other remedies may be relevant to the action; nearly all issues will be resolved by such determination.

5.  This Counter-Claim (and ultimately, the Complaint also) arises under the federal Copyright Act, 17 U.S.C.§ 101 et seq., as amended, and the statutory and common law of State of California.  This Court has subject-matter jurisdiction over this dispute under 28 U.S.C $ 1331 (federal question) because the claims asserted arise under the Copyright Act.

6.  In addition, this Court has jurisdiction of this case under 28 U.S.C. Section 1332 because the citizenship of Plaintiffs is diverse from the citizenship of all properly named and/or necessary Defendants, and the amount in controversy exceeds $75,000.00.

---

[1] On April 11, 2016, Plaintiffs CineWorld, LLC and Cinemoi North America, LLC ("Plaintiffs") commenced an action entitled *Cineworld v. Montecito* in the Superior Court of California, County of Los Angeles (West) Case Number SC125682 (the "State Court Action"). A copy of the Complaint filed in the State Court Action is attached to Defendants' Notice of Removal. It is respectfully requested that the Court take Judicial Notice thereof.

a)  Defendants are informed and believe that Cinemoi North America, LLC ("Cinemoi") is a California limited liability company which is organized and operates entirely in the State of California. CineWorld, LLC ("CineWorld"), while purporting to be a Delaware limited-liability company which is wholly owned by Cinemoi, is actually a shell entity which is completely controlled by Cinemoi, has no independent interests and operates completely within the State of California. As such, Cinemoi is a dispensible party and their only purpose in this action is to attempt to avoid diversity.  Like Cinemoi, its principals (who are being named as Cross-Defendants) in Defendants' cross-complaint are citizens of the State of California.

b)  Defendant Montecito Productions, LLC is a Delaware corporation with its principal place of business in the State of New York. Likewise, Defendant Nicholas Longano is a citizen and resident of the State of New York. Brilliant VR, Inc. is a Delaware corporation which was fraudulently added by Plaintiffs.

c)   The remaining defendants are named as "Doe" Defendants and as such are disregarded in determining the existence of diversity.  28 U.S.C. Section 1441 (a).

7.  Venue is proper in this judicial district under 28 U.C.S §1391(b)(2) because a substantial part of the events giving rise to the claims asserted herein occurred in this District. Venue is also proper under 28 U.S.C.  § 1391(b)(1) because Defendants are subject to personal jurisdiction in this District and therefore "reside" in this District as term is defined in 28 U.S.C. § 1391(c). In addition, each Defendant conducts a substantial amount of business in this District.

**FIRST COUNTER-CLAIM:**

**REQUESTING DECLARATORY RELIEF AGAINST EACH PLAINTIFF AND IN FAVOR OF DEFENDANTS DECLARING OWNERSHIP OF COPYRIGHTS**

8.  Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 7 above, as if fully set for the herein.

4

9.  Plaintiffs and Defendants entered into a written agreement (a true and correct copy of which is attached hereto as Exhibit A) pursuant to which Defendants were to render certain services to Plaintiffs in connection with the building of a virtual reality, entertainment product. Plaintiffs retained Defendants due to Defendants' expertise and as a result of Plaintiffs being impressed with Defendants' own virtual reality world designed for the mainstream entertainment industry.

10.  Defendants rendered the services diligently and despite Plaintiffs' numerous requests for changes and new features due to Plaintiffs' dissatisfaction with Plaintiffs' concepts, ideas and unrealistic expectations.  The foregoing was due to Plaintiffs' lack of expertise in the digital entertainment and technology business.

11.  Plaintiffs became frustrated that Plaintiff's project was not as compelling as Defendants' project and began taking an aggressive and disruptive approach. Ultimately, Plaintiffs ceased paying Defendants pursuant to the terms of the Agreement and repudiated the Agreement prior to the completion of services called for thereunder. Thereafter. Plaintiffs filed the Complaint (in State Court) and took other efforts to obtain more information about Defendants' project (including attempts to obtain Defendants' intellectual property via a State Court subpoena and otherwise).

12. In response to Plaintiffs' request, Defendant provided Plaintiffs with all of their artwork and other materials which were created in connection with Plaintiff's project, pursuant to the terms of the Agreement. However, Plaintiffs sought to obtain significantly more information and also demanded materials and functionality which was not yet created because Plaintiffs ceased making payment and repudiated the Agreement before the services anticipated thereby were completed.  Plaintiffs are not entitled to Defendants' project and/or platform (nor the underlying platform, owned by a third party, upon which Defendants' project was to operate). Notwithstanding the foregoing, Plaintiffs continue to seek possession and ownership of materials which are not subject to the Agreement and which are not works made-for-hire for Plaintiffs.

13. There is a substantial and continuing controversy between the parties and a declaration of ownership rights is both necessary and appropriate to establish that Defendants have delivered all works made-for-hire under the Agreement to Plaintiffs. A Declaratory Judgment which properly designates which materials belong to each of the Parties will address all of the non-monetary issues between the parties and permit them to proced with their respective projects without interruption and without re-visiting the ownership issues many times going forward.

## PRAYER FOR RELIEF

WHEREFORE, Defendant respectfully requests the Court enter judgment as follows:

A. Declaring that Defendants have heretofore delivered all materials to Plaintiffs which constitute works made-for-hire and/or "results and proceeds" pursuant to the Copyright Act; and

B. Declaring that Defendants have heretofore delivered all materials to Plaintiffs which constitute works made-for-hire and/or "results and proceeds" of Defendants' services pursuant to the Agreement; and

C. Declaring that Defendants retain any and all intellectual property rights in connection with Defendants' project and/or which were not delivered to Plaintiffs as aforesaid; and

D. Declaring that Defendants have not infringed upon any of Plaintiffs' copyrights, trademarks and/or other intellectual property rights; and

E. Awarding Defendants' their costs, expenses and reasonable attorneys' fees pursuant to 35 U.S.C. § 285 and otherwise, as provided by law; and

F. Awarding Defendants such other relief that the Court deems just and proper under the circumstances.

## SECOND COUNTER-CLAIM FOR DAMAGES
## FOR BREACH OF CONTRACT / REPUDIATION BY DEFENDANT MONTECITO
## PRODUCTIONS AGAINST ALL PLAINTIFFS

14.  Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 13 above, as if fully set for the herein.

15.  Plaintiffs and Defendants entered into the Agreement which provided that Plaintiffs would pay to Defendants the sum of Five Hundred Fifty Thousand Dollars ($550,000.00) in ten (10) equal monthly installments in exchange for Defendants consulting with Plaintiffs for the building of a virtual, reality world.  The Agreement was legal, binding and supported by adequate consideration.

16. At all times, Defendants diligently and dutifully performed each and all of Defendants' obligations under the Agreement.  Plaintiffs, however, ceased making payments to Defendants approximately half-way into the Agreement (Plaintiffs paid Defendant $275,000 of the $550,000 contract).  Plaintiffs at such time (approximately February 2016) repudiated the Agreement and demanded that Defendants cease all work being performed under the Agreement.

17.  Defendants demanded payment for all of the completed work and further requested that Plaintiffs honor the balance of the term of the Agreement. Plaintiffs refused and continue to refuse to pay the amounts due to Defendants.

18.  As a direct and proximate result of Plaintiffs' breach and repudiation of the Agreement, Defendants suffer economic damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

7

WHEREFORE, Defendant respectfully requests the Court enter judgment as follows:

A. Awarding Defendants damages in the amount to be proven at trial.

B.  Awarding Defendants' their costs, expenses and reasonable attorneys' fees pursuant to 35 U.S.C. § 285 and otherwise, as provided by law; and

C. Awarding Defendants such other relief that the Court deems just and proper under the circumstances.

DATED:  May 5, 2016

*Michael Traylor*
_____
Michael S. Traylor
Attorney for Defendants

8

# EXHIBIT A

Memorandum of Understanding
CineWorld, LLC and Montecito Productions, LLC.

This Memorandum of Understanding ("Agreement") summarizes the principle terms of a proposed transaction and work made for hire with respect to the parties and is effective as of September 10, 2015 ("Effective Date") by and between Montecito Productions, LLC, ("MP") and CineWorld, LLC, a Delaware entity or its affiliated entities (the "Company"). Each of MP and Company shall be referred to herein individually as a "Party" and collectively as "Parties."

In consideration of the time and expense devoted with respect to this transaction, certain provisions of this Agreement, including, but not limited to: confidentiality, non-disclosure, counsel and expenses provisions of this Agreement shall be binding obligations of the Parties whether or not this Agreement is consummated. This Agreement is conditioned upon the completion of due diligence, legal review, and documentation that is satisfactory to the Parties. This Agreement shall be governed in all respects by the laws of the State of California.

Capitalized terms not otherwise defined herein shall have the meanings set forth in other agreements set forth between the Parties.

## THE TRANSACTION

| | |
|---|---|
| *Product (Artwork")* | MP's role is to provide the CineWorld product artwork ("Artwork"), which is defined as all virtual environments, virtual avatars, avatar animations, and virtual clothing. |
| *Compensation* | The Company agrees to compensate MP a sum of fifty five thousand dollars ($55,000) ("Amount Due") per month on a work made for hire to create the Artwork that will be used in the creation of a project called CineWorld. Unless otherwise requested by MP, all Amount Due shall be made in U.S. Dollars sent via check handed directly to MP or sent to this address: 714 Alston Road, Montecito, CA 93108 or by wire transfer. Amount Due shall be paid on the 10th day of each month. If any amount payable to MP is subject to any tax, charge or duty in the territory (excluding any income tax imposed by the State of California or the United States and payable by MP), Company shall furnish to MP official proof of such payment. |
| *Term* | The initial term of this Agreement shall commence on the Effective Date and shall continue through June 30, 2016, unless sooner terminated by either Party in accordance with the terms and conditions of this Agreement ("Term"). The Term of this Agreement may be extended solely by a written agreement executed by an authorized representative of each Party. |
| *Valuation* | Parties shall cooperate and agree with Houlihan's Valuation Advisors ("Houlihan") regarding the valuation of Company. |

1

| | |
|---|---|
| **Deliverables** | Following this Agreement, Parties shall draft a scope of work as Exhibit A ("Exhibit A") outlining specific details of this Agreement and specific completion dates and times regarding the Artwork. |
| **Relationship of the Parties** | MP and Company hereby acknowledge and agree that MP's relationship to Company is that of an independent contractor, and not an agent, employee or servant, and MP will be solely responsible for payment of MP's own taxes applicable to Amount Due. In the ordinary course of business, MP may perform services for parties other than Company and is not precluded from doing so by this Agreement. MP shall have the sole and exclusive right and responsibility to control, and to determine, the method, mode, means, and manner, by which MP, its agents, employees, representatives or subcontractors, perform this Agreement required herein, except as otherwise set forth herein. Company shall have no voice in the selection, discharge, supervision or control of MP's agents, employees, representatives or subcontractors, or in fixing their number, compensation, or hours of service. MP shall perform all work required herein as an independent contractor of Company and shall remain at all times as to Company a wholly independent contractor with only such obligations as are consistent with that role. |
| **Representations & Warranties:** | Standard representations and warranties by the Parties to be included in the definitive documentation. |
| **Due Diligence** | The transactions contemplated by this Agreement are subject to the satisfactory completion of due diligence by Parties and negotiation of definitive documents. |
| **Intellectual Property** | All Artwork and other work delivered for CineWorld under this Agreement, including the work related to the CineWorld brand, are the Intellectual Property of Cinemoi. |

Company shall own and MP hereby exclusively grants to Company all rights, title and interest of every kind and character in perpetuity throughout the world in and to all of the results and proceeds of MP's services hereunder (collectively, the "Material"), including all copyrights, renewals and extensions of copyrights, all of which shall be deemed works-made-for-hire specially commissioned for use by Company, and Company shall be deemed the author thereof for all purposes. To the extent, under the applicable law, the Material may not be considered a work-made-for-hire, MP hereby transfers and conveys to Company, to the maximum extent permitted by the applicable law, all of MP's right, title, and interest in and to the Material so that Company shall be the sole owner of all copyrights therein. In this regard, MP grants to Company the sole and exclusive right to exhibit, record, reproduce, broadcast, televise, transmit, distribute, advertise, exploit, publicize and use the Material and each and every part thereof, for any purpose, in any manner, by any means, methods or media, whether now known or hereafter devised, throughout the world, in perpetuity. MP also grants to Company and Company shall have the right to adapt, change, revise, delete from, add to or rearrange the Material and the right to assign to any assignee the right to utilize any of the Material. MP waives all "moral rights" of authors and acknowledges that MP has no separation of rights with respect to any of the Material. MP agrees to execute and deliver to Company such additional documents consistent herewith reasonably necessary to evidence or effectuate the purposes or intent of this Agreement, and MP hereby irrevocably appoints

2

Company as MP's attorney in fact to execute and deliver all such documents that MP fails, refuses or neglects to do so within ten (10) business days of Company's request.

**Merger**    Parties shall proceed with a merger in good faith. Upon a potential merger of the Parties, MP shall be provided with an eighteen percent (18%) ownership interest in Company based on the Houlihan Loukey valuation using both the viewer multiples and discounted cash flow valuation methodologies.

*[handwritten: RMS    nfl RMS]*
*[handwritten: nfl CineWorld, LLC]*

**Counsel & Expenses**    MP shall pay all of its own expenses, including but not limited to, legal and administrative costs of this Agreement unless stated otherwise in this Agreement. Company shall pay all of its own expenses, including but not limited to, legal and administrative costs of this Agreement unless stated otherwise in this Agreement.

Counsel:    Dongell, Lawrence, & Finney, LLP.
707 Wilshire Boulevard, 45th Floor
Los Angeles, CA. 90017
Tal C. Finney, tfinney@dlflawyers.com
Phone: (310) 729-7266

**Confidential Information**    "Confidential Information" means all information, whether in written, verbal, graphic, electronic, data or any other form, including, without limitation, proprietary, technical, financial information, business plans, forecasts, retail strategies and projections or analyses, customer, personnel, development, marketing sales, operating, performances, cost, know-how, business and process information, software, computer programming techniques, design, research, documents prepared by either Party and all record bearing media containing or disclosing such information and techniques, furnished, made available or otherwise disclosed at any time (whether before or after the date of this Agreement) by or on behalf of either Party or any of its directors, officers, affiliates, employees, shareholders, unitholders, agents, advisors or representatives (collectively, "Representatives") to either Party, all information which has not been designated as confidential by the discloser, but which by its nature or under the circumstances of its disclosure should be regarded by the recipient as confidential, together with any and all notes, analyses, compilations, studies, interpretations or other documents prepared by or on behalf of either Party that contain, reflect or are otherwise based upon, in whole or in part, such information or either Party's review of or interest in either Party or the potential transaction pursuant to this Agreement.    Confidential Information shall also include the fact that Confidential Information has been made available to either Party, that discussions, negotiations or investigations relating to a potential transaction are taking place or have taken place, and any of the terms, conditions or other facts with respect to any potential transaction, including the status of the discussions, negotiations or investigations relating thereto.    When appropriate, the term shall also include any samples, models or prototypes, or parts thereof. Confidential Information shall include any written or electronically generated information provided by one Party to the other.

**Non-Disclosure**    Parties will not disclose any Confidential Information except to either Party's representatives who need to know such information for the permissible, subject to the following sentences of this paragraph. Each of the Party's representatives shall be informed by the other Party of the confidential nature of such information and shall be directed to treat such information in confidence in

3

accordance with this Agreement, and either Party shall be liable to the other Party for any breaches of this Agreement. In any event, Parties agree, at either Party's sole expense, to take all reasonable measures (including but not limited to court proceedings) to restrain the other Party's representatives from prohibited or unauthorized use of any Confidential Information. In the event that either Party is requested or required by law, regulation, regulatory authority or other applicable judicial or governmental order to disclose any Confidential Information, the other Party shall (a) provide other Party with prompt written notice of such request or requirement, (b) consult with other Party and its counsel on the advisability of taking legally available steps to resist or narrow such request and (c) assist other Party, at other Party's expense, in seeking a protective order or other appropriate remedy to limit or minimize such use. If a protective order or other remedy is not obtained and other Party is, based on the reasonable advice of counsel, legally required to disclose Confidential Information, other Party may disclose to the applicable tribunal only that portion of the Confidential Information that other Party is so legally required to disclose and will exercise reasonable efforts, upon either party's written request, to obtain assurance that confidential treatment will be accorded to that portion of the Confidential Information disclosure.

**No Shop:**   The Parties agrees to work in good faith and expeditiously towards this Agreement. For the purpose of this transaction and this Agreement, the Parties agree that it will not, for a period of four (4) weeks from the Effective Date, take an action to solicit, initiate, encourage or assist the submission of any proposal, negotiation or offer from any person or entity other than from either Party.

**Expiration:**   If not executed, this Agreement expires on September 15, 2015.

IN WITNESS WHEREOF, the Parties have executed this Agreement on September 10, 2015.

| | |
|---|---|
| MONTECITO PRODUCTIONS LLC | Cinemoi North America, LLC/CineWorld LLC |
| MP- Company (If applicable): | Company- Company (If applicable): ) |
| CEO | Chairman and CEO |
| MP- Position (If applicable): | Company- Position (If applicable): |
| NICHOLAS LONGANO | Roderick M. Sherwood III |
| MP- Name: | Company- Name: |
| MP- Signature: | Roderick M Sherwood III |
| | Company- Signature: |
| I have authority to bind NL (Initials) | I have authority to bind RMS (Initials) |
| (If applicable) | (If applicable) |

4

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within entitled action; my business address is 9018 Balboa Blvd., Suite 352, Northridge, CA. 91325.

On May 5, 2016  I served the following documents described as Counter-Claim for Declaratory Relief and Damages on the interested parties in this action as follows:

☑   by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list;

☑   BY FEDERAL EXPRESS

☑   I deposited such envelope(s) with Federal Express at Northridge, California.  The envelope(s) was (were) mailed with postage thereon fully prepaid.

☑   I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with Federal Express on that same day in the ordinary course of business for next (business) day delivery.

☐   BY FACSIMILE  I caused the items to be transmitted to the correct facsimile number for the party served.  No error message was received.

☑   STATE        I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 5, 2016  at Northridge, California.

Michael S. Traylor

*Michael Traylor*
_____
Signature

10

<u>SERVICE LIST</u>

BRIAN G. WOLF, ESQ.

LAVELY & SINGER

2049 Century Park East, Suite 2400

Los Angeles, California  90067-2906

Telephone: (310) 556-3501

Facsimile: (310) 556-3615

E-Mail:  bwolf@lavelysinger.com